# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black GPS Tracker<br>FP&F No. 2022250600053601-0008<br>("Target Device") | Case No.  '23 MJ00101 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952, 960 | Importation of Controlled Substances |
| 21 U.S.C. Section 963 | Conspiracy to Import Controlled Substances |

The application is based on these facts:

See attached Affidavit of HSI Special Agent Adam Cross, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Adam Cross*
*Applicant's signature*

Adam Cross, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date:    01/11/2023   

*William V. Gallo*
*Judge's signature*

City and state:    San Diego, California    Honorable William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Black GPS Tracker
>FP&F No. 2022250600053601-0008
>("**Target Device**")

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, SIM cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Device** for evidence described below, between the dates of May 10, 2022, up to and including June 10, 2022. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be electronic records, subscriber information, and location data for the period of May 10, 2022, up to and including June 10, 2022:

   a.   tending to indicate patterns of drug importation from Mexico into the United States, to include locations, dates, and times;

   b.   tending to identify the location of drug stash houses in both Mexico and the United States;

   c.   tending to identify the location where drugs are loaded into vehicles in Mexico as well as locations where the drugs are unloaded once the importation of drugs from Mexico into the United States is complete;

   d.   tending to identify the user of, or persons with control over or access to, the Target Device and/or the vehicle used for the importation of controlled substances;

   e.   tending to identify the routes taken to successfully cross drugs and further transport them into the interior of the United States; and

   f.   tending to identify co-conspirators involved in the importation of controlled substances;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Special Agent Adam Cross, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

    Black GPS Tracker

    FP&F No. 2022250600053601-0008

    ("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Dianna HERRERA ("HERRERA") for importing approximately 9.24 kgs (20.37 lbs) of methamphetamine and approximately 5.56 kgs (12.25 lbs) of fentanyl from Mexico into the United States. *See United States v. Herrera*, 22CR02747-JO. The **Target Device** is currently in the custody of Homeland Security Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since January of 2019. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled

substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in drug trafficking investigations, I have gained a working knowledge of the operational habits of drug traffickers, in particular those who attempt to import controlled substances into the United States from Mexico at Ports of Entry.

5. Based on my training, experience, debriefs with drug traffickers at multiple levels of drug trafficking organizations, and conversations with experienced investigators, I am aware that a common tactic utilized by drug traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of controlled substances in vehicles, I am aware that traffickers in Mexico frequently utilize multiple vehicles to transport controlled substances from their origination in Mexico to their final destination in the United States. Oftentimes traffickers transport the controlled substances to a location near the international border in Mexico, and then transfer them into a vehicle for crossing into the United States. Once inside the United States these vehicles can sometimes stop just over the border to transfer the controlled substances to another vehicle, or they can drive further into the interior of the United States prior to unloading them. Drug traffickers may use the same vehicle and driver on multiple occasions if they are successful in crossing controlled substances on the first occasion.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in controlled substances trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that vehicle GPS tracking devices receive signals emitted by satellites in earth's orbit as part of the Global Navigation Satellite System network. The tracking device is able to determine its location based on the signals it receives from the Satellites. For tracking devices located in vehicles, I am aware that trackers are able to gather information about a vehicle's speed, location, idle time, and additional diagnostics. The tracker then transmits all the data back to the computer servers

maintained by the company servicing the tracker. The tracking device location can be determined anywhere on earth and reflects its location utilizing latitude and longitude measurements. Depending upon the number of satellites that connect to the device and the design of a particular tracker, the location can be accurately determined within meters. The companies that provide GPS tracker services may maintain accounts for individuals utilizing the trackers. They may maintain account information to include the account holder's name, address, email, and/or phone number.

7. I am aware that it is common practice for narcotics traffickers to utilize tracking devices. I am aware that narcotics traffickers in Mexico frequently track the individual responsible for bringing the concealed narcotics into the United States and transporting it to a certain location. When the importation is underway, narcotics traffickers frequently track the smuggler to remotely monitor the progress of the narcotics. When the smuggler and the narcotics have made it to their destination in the United States, narcotics traffickers may track down the smuggler by using the GPS tracker's location information.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that tracking devices (including their SIM card(s)) can and often do contain electronic evidence, including, for example, location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the SIM card(s). Specifically, searches of tracking devices and their SIM Card(s) may yield evidence:

    a. tending to indicate patterns of drug importation from Mexico into the United States to include locations, dates, and times;

    b. tending to identify the location of drug stash houses in both Mexico and the United States;

    c. tending to identify the location where drugs are loaded into vehicles in Mexico as well as locations where the drugs are unloaded once the importation of drugs from Mexico into the United States is complete;

3

    d. tending to identify the user of, or persons with control over or access to, the Target Device and/or the vehicle used for importation of controlled substances;

    e. tending to identify the routes taken to successfully cross drugs and further transport them into the interior of the United States; and

    f. tending to identify co-conspirators involved in the importation of controlled substances..

9. The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates, times, and amounts are approximate.

### FACTS SUPPORTING PROBABLE CAUSE

10. On June 10, 2022, at approximately 12:06 a.m., HERRERA, a United States Citizen, applied for entry into the United States from Mexico through the Otay Mesa Port of Entry as the driver, sole occupant, and registered owner of a 2020 Kia Optima. A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the interior side of the rear quarter panel on the driver's side of the Optima. A Customs and Border Protection Officer received a Customs declaration for cookies from HERRERA. HERRERA stated she was crossing the border to go to Escondido, California. HERRERA and the Optima were referred to secondary inspection.

11. In secondary inspection, further inspection of the vehicle resulted in the discovery of 25 total packages concealed in the rear quarter panels of the Optima. 20 of the packages contained a substance, a sample of which field tested positive for the

4

characteristics of methamphetamine, with a total approximate weight of 9.24 kgs (20.37 lbs) and the remaining 5 packages contained a substance, a sample of which field tested positive for the characteristics of fentanyl, with a total approximate weight of 5.56 kgs (12.25 lbs). HERRERA was subsequently placed under arrest.

12. During a post-arrest interview, HERRERA denied knowledge of the drugs and stated she was planning to transport money from the United States into Mexico for a friend. HERRERA told agents that she went to Mexico to have a GPS tracker installed on the Optima because the friend who asked her to transport money did not trust HERRERA. HERRERA stated that after she arrived in Mexico, two men took the Optima for approximately 30 minutes to affix a magnetic GPS. After the Optima was returned to HERRERA, the friend told Defendant the men were unable to affix the GPS to the Optima so the money transporting deal was off.

13. The **Target Device** was found inside the Optima during a joint vehicle inspection on January 4, 2023. I placed the **Target Device** in an evidence bag and seized it under FP&F No. 2022250600053601–0008.

14. Based on my training and experience, and my consultation with other law enforcement officers who have analyzed GPS tracking devices, I believe the **Target Device** may contain SD, SIM, or other memory cards that may contain subscribers' contact and billing information and detailed information concerning the subscriber's tracker location based on GPS tracking signals (such as latitude and longitude data) associated with the individual tracking device.

15. In light of the above facts and my experience and training, there is probable cause to believe that the **Target Device** contains information associated with the movement of HERRERA's vehicle in both the United States and Mexico. Further, in my training and experience, drug traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Coordinators of drug importation events may use the same driver on multiple occasions, and they may have the driver travel back and forth across the border to develop a normal crossing pattern. Accordingly, I

request permission to search the **Target Device** for data beginning on May 10, 2022, up to and including June 10, 2022.

## METHODOLOGY

16. It is not possible to determine, merely by knowing the GPS device's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Many GPS tracking devices store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some GPS tracking device models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the tracking device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

19. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

19. Based on the foregoing, I request that the Court issue the proposed search warrant for the **Target Device**, pursuant to Federal Rule of Criminal Procedure 41. Based upon my training and experience, consultation with other law enforcement officers experienced in controlled substances importation investigations, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Device**, as described in Attachment A, will contain evidence of the importation of controlled substances, as set forth in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Adam Cross*
Special Agent Adam Cross
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __11__ day of January, 2023.

*William V. Gallo*
The Honorable William V. Gallo
United States Magistrate Judge

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black GPS Tracker
> FP&F No. 2022250600053601-0008
> ("**Target Device**")

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, SIM cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Device** for evidence described below, between the dates of May 10, 2022, up to and including June 10, 2022. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be electronic records, subscriber information, and location data for the period of May 10, 2022, up to and including June 10, 2022:

a. tending to indicate patterns of drug importation from Mexico into the United States, to include locations, dates, and times;

b. tending to identify the location of drug stash houses in both Mexico and the United States;

c. tending to identify the location where drugs are loaded into vehicles in Mexico as well as locations where the drugs are unloaded once the importation of drugs from Mexico into the United States is complete;

d. tending to identify the user of, or persons with control over or access to, the Target Device and/or the vehicle used for the importation of controlled substances;

e. tending to identify the routes taken to successfully cross drugs and further transport them into the interior of the United States; and

f. tending to identify co-conspirators involved in the importation of controlled substances;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.